In re Richard D. WOOD and Shirley Ann Wood, husband and wife, Debtors.

Richard D. WOOD and Shirley Ann Wood, husband and wife, Plaintiffs,

v.

The PILLSBURY COMPANY, a corporation; Jackson Equipment Co., a corporation; Dennis Jackson, dba Robert's True Value Hardware; Deloy Ray; Ladd Holmquist; Jack Wood; Ada Wood; Utah Power & Light Co., a corporation; Vernon Martin, dba Vernon Martin Trucking; Sugar City Produce; Shane Linderman; Max Nadauld, dba Max Nadauld Auto Center; Ray Groth Oil Company; and United States of America acting through the Farmers Home Administration, Defendants.

Adv. No. 83–0492.

United States Bankruptcy Court, D. Idaho.

Nov. 25, 1983.

Franklin N. Smith, Jr., of Albaugh, Smith, Pike, Smith & Anderson, Idaho Falls, Idaho, for plaintiffs.

R.J. Hoopes of Hoopes & Smith, Rexburg, Idaho, for defendant Shayne Linderman.

Wm. Charles Carr of Petersen, Moss, Olsen, Meacham & Carr, Idaho Falls, Idaho, for defendant Pillsbury Co.

Alan C. Stephens of St. Clair, Hiller, Wood & McGrath, Idaho Falls, Idaho, for defendant Utah Power & Light Company.

## MEMORANDUM DECISION

M.S. YOUNG, Bankruptcy Judge.

Plaintiff debtor in possession brought the instant action seeking to avoid the interests of defendants in 1982 crops and the proceeds thereof. 11 U.S.C. § 544(a). A number of the defendants have been defaulted. Plaintiff has moved for summary judgment as to defendants Farmers Home Administration, The Pillsbury Company (Pillsbury), Shayne Linderman, and Utah Power & Light (UP & L). By agreement of counsel, no summary judgment is now pending in regard to the interests of defendant Farmers Home Administration. At hearing on plaintiff's motion, it was further agreed that the matter would also be considered as submitted upon cross-motions for summary judgment by the other three above named defendants.

These defendants each claim a security interest in the 1982 crops. Pursuant to I.C. 28–9–105(1)(h), crops are "goods" under the Uniform Commercial Code, thus security interests must be created and perfected in compliance with Article 9 in order to be valid as against a trustee or debtor in possession.

The security interest of Linderman is predicated upon a "crop mortgage" which, from its appearance, is an archaic preprinted form used prior to the adoption of the UCC. However, Article 9 of the UCC states that a security agreement means merely "an agreement which creates or provides for a security interest." I.C. 28–9–105(1)(*l*). There is no doubt that the "crop mortgage" of Linderman provides for such a security interest and this interest further appears to have attached under the requirements of I.C. 28–9–203(1).

However, in order to be enforceable against the debtor in possession, Linderman's security interest must be perfected under §§ 28–9–302 and 28–9–303 by the filing of a financing statement which complies with § 28–9–402(1). That section provides in pertinent part:

> "A financing statement is sufficient if it· gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.... When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned."

While the document granting the security interest may be filed as a "financing statement" to perfect the interest, in referring to the crop mortgage in question [1], I find that two elements required under § 28–9–402(1) are lacking. The crop mortgage of Linderman does not contain the mailing address of the debtor, rather it states only "Richard Wood, City of Roberts of County of Jefferson, State of Idaho." Nor is there an address of the secured party from which information may be obtained, the document identifying that party only as "Shayne Linderman of Jefferson County, mortgagee."

·The function of the financing statement requirement is to give notice of a potential interest in property of a specifically identified debtor as well as means by which an inquiring party may acquire more detailed information concerning that interest. In this case, even conceding that a certain amount of liberality should be granted in regard to descriptions or identification of parties in the more rural areas of the state, I cannot conclude that this requirement of the statute is met. The identifications are simply too vague. Recording of such a "financing statement," which does not contain the information required under § 28–9–402, does not constitute perfection of the interest. Summary judgment will be granted plaintiff avoiding the interest of Linderman under § 544(a) [2].

---

1. This document was not attached to an affidavit under Bankruptcy Rule 7056 and FRCP 56(e), rather it was appended to counsel's memorandum in opposition to plaintiff's motion for summary judgment. However, in light of the fact that all counsel have based their arguments and motions upon such documents and since there is apparently no factual issue raised as to the accuracy of the copy of this document or its filing (except as to where indexed), I will consider the document as being of record in regard to the pending motions.

2. Linderman has made the argument that the debtor acquired the asset here in dispute, to wit the 1982 crops, through fraud. Therefore, it is urged, this asset did not become property of the estate under § 541(a). No authority is offered in support of this argument nor does it appear it has any basis under the Code. All interests of the debtor become property of the estate. Fraud may be an issue in regard to dischargeability or other matters but, even if it exists, it does not serve to remove assets from the estate. Further, to the extent defendant's argument implies a theory of estoppel, an issue also raised in other answers filed in this case, it must be remembered that the debtor in possession is a new entity and is not the same as the prepetition debtor. In summary, neither of these arguments has been sufficiently presented, either factually or legally, to support summary judgment for Linderman.

▆ Defendant UP & L holds a similar crop mortgage which constitutes a security interest under Article 9. However, I find that it does not suffer from those technical defects under § 28–9–402 found in regard to Linderman's crop mortgage. This document does identify the debtor and provides what appears to be a mailing address. It identifies the mortgagee as "Utah Power & Light Co. of Rigby, Idaho." When the secured party is a business entity, identification of that party by name and by reference to the town in which the · relevant office of that business entity is located is sufficient to meet the requirements of § 28–9–402(1). Further information concerning the interest could readily be obtained by an inquiring party based upon this information.

▆ Though this crop mortgage meets the formal requirements of a financing statement under Article 9, under §§ 28–9–302, 28–9–303 and 28–9–401(1)(A), this "financing statement" must be filed in the office of the Jefferson County recorder. Section 28–9–403(1) defines "filing":

> "Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing · officer constitutes filing under this chapter."

It is apparently conceded that UP & L presented the crop mortgage to the county recorder for filing and tendered a fee therefor. The difficulty arises in that plaintiff, through affidavit of counsel, asserts that a search of the UCC financing statement index in Jefferson County failed to disclose this crop mortgage. This assertion has not been rebutted and creates the inference that, though filed, the mortgage was not properly indexed by the recorder. Though no evidence was presented, all counsel apparently contend, based upon arguments made at hearing, that the recorder placed the crop mortgage in a "miscellaneous mortgage" index, thus thwarting the notice function of filing financing statements under Article 9.

Idaho Code 31–2404 specifies what indices a county recorder must keep, one of which is an index labeled "financing statements" as required by Article 9. I.C. § 31–2404(27). See also § 28–9–403(4). There is no specified index for "miscellaneous mortgages" or for "chattel mortgages." While former § 31–2404 provided for indices concerning mortgages of personal property, these provisions were repealed upon adoption of the UCC, Article 9 of which is the exclusive method of obtaining and perfecting a security interest in personal property.

Defendants present considerable authority to the effect that, following presentation of a UCC–1 form financing statement, or another document containing the requisite elements of 28–9–402(1), and the necessary fee, the secured creditor's duties are fulfilled and the interest is perfected even though that document is improperly indexed by the recorder and no notice is given to searchers. See, e.g., *Matter of Flagstaff Foodservice Corp.*, 16 B.R. 132, 32 UCC Rep. 1666 (Bkrtcy.S.D.N.Y.1981), and cases cited therein. As White & Summers, *Uniform Commercial Code* (2d Ed. 1980) states at p. 951:

> "Implicit in the definition of filing and explicit in the comments is the idea that errors of filing officers are not borne by creditors. The cases are clear that a mistake by a clerk ... does not affect the perfection of the creditor's security interest where the financing statement presented was proper even though no notice is given to subsequent searchers."

And Official Comment (1) to I.C. 28–9–407 states, relevant to this issue:

> "Subsection (1) [of § 28–9–407] requires the filing officer upon request to return to the secured party a copy of the financing statement on which the material data concerning the filing are noted. Receipt of such a copy will assure the secured party that the mechanics of filing have been complied with. *Note, however, that under Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that section the secured party has complied with the filing re-*

*quirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer."* [Emphasis added.]

Plaintiff counters with authority which imposes a duty upon a secured party filing a document other than a UCC–1 for use as a financing statement to advise the recorder of the intended function of the document in order that it can be properly indexed. These cases, however, concern situations where ambiguous or "multi-purpose" documents are filed. See, e.g., *United States v. Globe Corp.,* 113 Ariz. 44, 546 P.2d 11 (1976). In *Whitworth v. Krueger,* 98 Id. 65, 558 P.2d 1026, 20 UCC Rep. 1368 (Idaho 1976), the Idaho Supreme Court, through the concurring opinion of Justice McFadden, would also seem to impose such a duty in cases where a document could be filed for more than one purpose. *98 Id. at 73–75, 558 P.2d at 1034–1036, 20 UCC Rep. at 1380–81.* The Idaho Supreme Court has yet to address the question of errors in UCC indexing as affecting perfection when unambiguous documents are filed. However, in the analogous area of real property recordation, it has stated:

> "[T]he great weight of authority seems to be that when a grantee has duly deposited for record a valid instrument at the proper time, at the proper office and with the proper officer, he has performed his whole duty, and subsequent purchasers will be charged with constructive notice, notwithstanding the officer does not spread the instrument on the records or fails to record it at all."

*Oregon Short Line R.R. Co. v. Stalker,* 14 Id. 371, 386, 94 P. 59 (1908).

I find the precedent cited by defendants not only represents the majority view but is more persuasive in the factual situation presented herein. The crop mortgage is not an ambiguous document nor could it be reasonably filed in an index other than that provided for by I.C. 31–2404(27). That index is the only place in which a "mortgage" of personal property, i.e., an Article 9 security interest, could properly be placed

following filing. The affidavit of William Carter, the UP & L district manager who tendered the document for recordation, states that he requested of the filing officer "that the document be recorded for the purpose of obtaining a security interest in the crops described."

I therefore conclude that the security interest provided UP & L by the crop mortgage is perfected and not voidable by the debtor in possession under § 544.

Pillsbury, unlike Linderman and UP & L, filed a UCC–1 form financing statement to perfect its security interest. This financing statement, however, does not meet the requirements of 28–9–402(1) in that, since it covers crops growing or to be grown, it must also "contain a description of the real estate concerned." The UCC–1 form in question describes the collateral only as "all crops in 1982." No description of the real estate concerned is provided.

■ Pillsbury argues that, upon filing such a UCC–1 in Jefferson County, all parties were put on notice that Pillsbury claimed a security interest in any and all crops of the debtor grown in that county during 1982. I cannot, however, conclude that the specific, additional, statutory requirement of description of the real estate upon which pledged crops are grown should be so liberally interpreted. Defendant offers no case law supporting this view. To the contrary, the weight of authority requires that some description of the real estate be set forth even though it need not necessarily be a legal description. See generally, Anno. "Sufficiency of Description of Crops under UCC, §§ 9–203(1)(b) and 9–402(1)," 67 ALR3d 308, and the cases cited therein.

■ Pillsbury, however, also filed with the Jefferson County Recorder a copy of its security agreement. This agreement contains all the requisite elements of a § 28–9–402(1), to wit, the names of the parties; the signature of the debtor; the mailing address of the debtor; a sufficient address of the secured party for acquisition of further information; a statement of the

**380**

collateral; and includes a sufficient description of the real estate concerned. Thus, its filing perfects the security interest under §§ 28–9–302 and 28–9–303.

The problem arises, as was true in regard to the crop mortgage of UP & L, that the UCC index search of plaintiff's counsel did not unearth this security agreement. From the arguments of counsel at hearing, it would appear that this agreement was also placed in the "miscellaneous mortgage" index. Apparently, no specific instructions were given the recorder in regard to the filing or indexing of this document. However, due to the fact that the security agreement was presented in conjunction with the UCC–1 financing statement, and the fact that no statutorily established index could be germane to such a document other than that for UCC security interests, I conclude that the filing was effective to perfect the interest in light of the authority discussed above.

I therefore find the interest of Pillsbury to be properly perfected and not avoidable by the debtor in possession under § 544(a).

Summary judgment is therefore granted defendants The Pillsbury Co. and Utah Power & Light, and is granted plaintiff in regard to the interest of defendant Shayne Linderman.

IT IS SO ORDERED.